2023 IL App (1st) 220942-U

SIXTH DIVISION
August 11, 2023

No. 1-22-0942

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CHERUN HAMPTON, | ) | |
| | ) | Appeal from the Circuit Court |
| Petitioner-Appellee, | ) | of Cook County, |
| | ) | |
| v. | ) | No. 13 D 650572 |
| | ) | |
| MARK WILLIAMS, | ) | Honorable |
| | ) | Fredrick H. Bates and |
| Respondent-Appellant. | ) | Karen J. Bowes, |
| | ) | Judges Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm and remand with directions. The circuit court did not err in entering an *ex parte* emergency order of protection without giving notice to respondent or without the presence of a court reporter, but the emergency order of protection has been extended for over three years and a hearing on the plenary order of protection should be conducted as soon as reasonably possible.

¶ 2    The orders that underlie this appeal are two *ex parte* emergency orders entered by the circuit court on January 27, 2020. The first order was an emergency order of protection against respondent Mark Williams, filed by petitioner Cherun Hampton on behalf of herself, their then nine-year-old son, and her older son from another relationship. The second order was an

"emergency order" suspending Mr. Williams's parenting time with his son. Since January 2020, the emergency order of protection has been extended, and the hearing on the plenary order of protection continued. Mr. Williams's timely interlocutory appeal, in which he is self-represented, is from an order entered on March 30, 2022, again extending the emergency order of protection, and temporarily denying Mr. Williams's any parenting time with his son. For the following reasons, we affirm but remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4     This case involves a highly contentious multi-year battle between Ms. Hampton and Mr. Williams regarding the custody and parenting of their minor son, whom we will refer to as D. We discussed the history of this case through August 2018 in a prior appeal, *Hampton v. Williams*, 2019 IL App (1st) 181894-U, and provide here only an overview of the facts relevant to this appeal.

¶ 5     In May 2014, Mr. Williams's paternity over D. was established, and in December 2015, the parties entered into a lengthy and detailed custody judgment and parenting agreement. *Id.* ¶ 6. The agreement gave Ms. Hampton sole custody and made her home D.'s prime residence. *Id.* Mr. Williams was the non-custodial parent with parenting time on alternate weekends from Friday afternoon through Monday morning, and alternate weekdays from Wednesday afternoon through Friday morning, along with various holiday time. But even before the agreement was reached, Mr. Williams expressed concern about D. living with Ms. Hampton due to his concerns about her older son, D.J., D.'s half-brother. *Id.* Starting in 2016, Mr. Williams made specific allegations that D. was being abused by D.J., and has continued to make similar allegations. *Id.* Ms. Hampton has consistently denied these allegations, accused Mr. Williams of coaching D., and claimed Mr. Williams filed multiple false reports with the Illinois Department of Children and Family Services

(DCFS), all of which were unfounded by the agency. *Id.* ¶ 7. This conflict has led to both parties filing multiple petitions, emergency motions, and other requests for relief, which have in turn resulted in multiple changes to the parenting schedule. *Id.* ¶¶ 9-32.

¶ 6    On August 22, 2018, the circuit court ordered that the December 2015 parenting agreement was to resume. In addition, the court ordered Ms. Hampton to keep D. enrolled in behavioral therapy and psychotherapy, to enroll D.J. "in a program to assess whether he pose[d] any risk to the minor child, or have him reside with his grandmother as previously proposed," and to "not under any circumstance leave [D.J.] alone with [D.]"

¶ 7    Mr. Williams initially appealed from that order and from another in which the court refused to discharge the guardian *ad litem* then assigned to the case, and we affirmed the court's rulings. *Id.* ¶ 2.

¶ 8    On January 27, 2020, Ms. Hampton filed two emergency motions. In the first, a petition for an emergency order of protection, Ms. Hampton alleged that she, D., and D.J. needed protection from abuse by Mr. Williams. Ms. Hampton accused Mr. Williams of threatening to harm her and D.J., and of bullying D. She said she "fear[ed] for [her] and [her] kids['] safety and mental well being." As a remedy, Ms. Hampton requested that Mr. Williams should be ordered to stay away from her, D., and D.J. Ms. Hampton also asked that Mr. Williams's visitation be temporarily suspended because he had "used court and DCFS to harass [her] and [her] family and bullied [their] son into saying he was abused." Ms. Hampton insisted that during police and forensic interviews when his father was not present, D. told the truth.

¶ 9    In the second, an emergency motion to modify Mr. Williams's visitation with D., Ms. Hampton alleged that there was an open DCFS report because Mr. Williams "reported neglect and

sexual abuse on 1/24/20 for the exact same allegations that have been unfounded previously on 3 separate occasions in which he alleged that [D.] was sexually abused." Ms. Hampton said she signed a two-week safety plan on January 24, 2020, calling for D. "to stay with a family member until the police investigation and forensic questioning of [their] son [was] complete to prevent [D.] from going to protective custody over false allegations." Amongst other things, Ms. Hampton accused Mr. Williams of coaching D. to say he had been abused, alleged that she feared for D.'s safety and mental health, and said she believed Mr. Williams would "continue to bully our son [D.] into lying so that the investigation may turn out in his favor. In order to allow our son [D.] the opportunity to tell the truth without being intimidated by his father it is extremely important that he is not granted visitation during this time."

¶ 10    On January 27, 2020, Judge Fredrick H. Bates entered an emergency order of protection. In the order, the court found that Ms. Hampton, D., and D.J. were protected persons, granted physical care and possession of D. to Ms. Hampton, and ordered Mr. Williams to have "no contact of any kind" with Ms. Hampton, D., or D.J. The matter of his visitation rights was "reserved," but with no contact until further order of the court. On the same day, the court also granted Ms. Hampton's motion to suspend Mr. Williams's parenting time, finding that she had "established that the factors set forth in 750 ILCS 5/602.7(b) [best interest factors for "Allocation of parental responsibilities; parenting time"] and 603.10(a) ["Restriction of parental responsibilities"] [we]re present in this case."

¶ 11    On February 14, 2020, Mr. Williams's attorney requested a continuance to prepare for the hearing on the plenary order of protection. In a written order entered that same day, Judge Bates explained in detail why he had granted Ms. Hampton's emergency motion to modify parenting

time and said that "[m]uch of that analysis also bears upon why the [emergency order of protection] was granted." The court then modified the January 27, 2020, parenting time order to allow Mr. Williams supervised "Facetime/Skype or equivalent Parenting Time" for 30 minutes three days per week until further order of the court. The court continued the matter to March 6, 2020, for a hearing on the plenary order of protection.

¶ 12    On March 4, 2020, Mr. Williams sought and was granted a continuance of the hearing until March 26, 2020. On March 17, 2020, the emergency order of protection was extended, and the case was continued to April 27, 2020, due to the onset of the COVID-19 pandemic. A number of additional continuances were then entered due to COVID-19 in the spring and summer of 2020. Although not all of those orders appear in the record on appeal, we may take judicial notice of the circuit court's online case docket. *5510 Sheridan Road Condominium Association v. U.S. Bank*, 2017 IL App (1st) 160729, ¶ 15. The online docket and the record that has been provided reflect the following developments after these orders were entered.

¶ 13    On March 24, 2020, Mr. Williams served a subpoena for records on the DuPage County Children's Advocacy Center (the CAC), the organization through which a recorded forensic interview was conducted with D. in January 2020. Counsel for the CAC filed an appearance in the case on April 29, 2020, and then moved for *in camera* review of the subpoenaed documents. Counsel explained that CAC records, recorded interviews or interview notes, and other materials "are confidential information which may not be disclosed" under the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2020)). Counsel asked that the court conduct an *in camera* review of those records, and, if it concluded that they should be released, to do so pursuant to a protective order.

¶ 14    On May 27, 2020, Judge Bates entered an order asking his presiding judge to reassign the case to a different judge to "Avoid Appearance of Bias – (Respondent asserts)." The case was transferred to Judge Karen J. Bowes on June 24, 2020.

¶ 15    On August 19, 2020, Judge Bowes entered the protective order that counsel for CAC had requested for the subpoenaed CAC documents, extended the emergency order of protection, and continued the hearing to September 11, 2020. Further extensions and continuances were entered throughout that fall and winter. On October 20, 2020, the court entered an order appointing Ms. Jo Anne Smith, a clinical social worker and therapist, to "conduct supervised parenting time between [Mr. Williams] and the minor child."

¶ 16    On January 12, 2021, Mr. Williams again moved to continue the hearing date, explaining that he was still pursuing documents from the CAC regarding the forensic interview it had conducted with D. The circuit court granted the motion, extending the emergency order of protection and continuing the case to February 18, 2021.

¶ 17    On February 18, 2021, the court appointed Vicky Pasley as guardian *ad litem* (GAL) for D., citing the "[f]requency and duration of father's parenting time and need for supervision/restrictions" as issues relevant to the appointment.

¶ 18    The emergency order of protection was extended and a hearing on that order continued numerous additional times throughout 2021. Eventually, the court set the hearing on the plenary order of protection for October 4, 2021.

¶ 19    On September 27, 2021, Mr. Williams filed an emergency motion to vacate the order of protection and the suspension or restriction of his parenting time. Mr. Williams alleged that on January 23, 2020, D. told Mr. Williams that "[w]hile at a resort at Pheasant Run Inn for

Thanksgiving. His older half-brother [D.J.] pulled him into a washroom, hit him, pulled out his penis and urinated in his mouth," and that as a result Mr. Williams took D. to the hospital where he was seen by a pediatrician; the case was transferred to CAC. Mr. Williams alleged that, in a forensic interview conducted on January 31, 2020, D. said that his mother left him with D.J. to go to a restaurant and that D.J. had peed in D.'s mouth, that this had happened before at his mother's house, and that he told both parents and his mother did nothing, but his father took him to the hospital.

¶ 20    Mr. Williams also argued that Ms. Hampton had, on multiple occasions, been ordered by the court not to leave D. unsupervised with D.J., and that she had been ordered to take D. to therapy but "ha[d] missed appointments" and been "discharged because of attendance." Mr. Williams also pointed out that Ms. Hampton was ordered to enroll D.J. "in a program to assess whether he pose[d] a risk" to D., but alleged that she had lied to the court when she said that D.J. had been evaluated.

¶ 21    Mr. Williams asked the court to vacate its January 27, 2020, emergency order of protection and order restricting Mr. Williams's parenting time, reinstate the parenting time granted to him in the December 2015 custody judgment, and find Ms. Hampton in contempt "for failing, neglecting, or refusing to complete a court ordered evaluation of her son, [D.J.], regarding allegations and a reasonable suspicion of abuse."

¶ 22    On October 4, 2021, Judge Bowes modified the order on visiting time to allow Mr. Williams supervised video parenting time with D. once per week for two weeks. The court also referred the parties for a private evaluation pursuant to section 604.10 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/604.10 (West 2020)) with Dr. Steve Farmilant to address the "mental & emotional health of all parties, reunification between father &

son, future parental allocation of parenting time & related issues."

¶ 23    The court entered several orders in October, November, and December 2021 directing the parties, and Mr. Williams in particular, to contact and begin services with Dr. Farmilant. The court also increased Mr. Williams's supervised video parenting time to three days per week.

¶ 24    On January 18, 2022, the court entered an order stating that Mr. Williams "explicitly and on the record refus[ed] to cooperate with and retain the 604.10 evaluator and ma[de] numerous misrepresentations to th[e] court about his contact with the 604.10 evaluator and further stat[ed] that he d[id] not have to follow court orders if he [did]n't want to." The court reserved "the parenting time issues due to [Mr. Williams]'s refusal to cooperate," and continued the case for a hearing on the plenary order of protection on March 30, 2022.

¶ 25    On March 3, 2022, Mr. Williams filed a motion that sought, in part, a combined evidentiary hearing on the order of protection and the temporary suspension of his parenting time.

¶ 26    On March 29, 2022, Ms. Hampton filed an emergency petition to reset the hearing date and to temporarily suspend Mr. Williams's video parenting time. Ms. Hampton explained that D. had been admitted to a hospital on Friday March 25, 2022, and would be there until Thursday, March 31, 2022. According to Ms. Hampton, "[s]aid hospitalization was as a result of issues directly related to the original basis for the Emergency Order of Protection which relates to [Ms. Hampton]'s and [D.]'s relationship with [Mr. Williams] and which will be more specifically discussed with this court at the hearing on the emergency petition." Ms. Hampton asked that the hearing date be stricken, the emergency order of protection extended, and Mr. Williams's Zoom parenting time suspended.

¶ 27    At the March 30, 2022, Zoom hearing, Mr. Williams was self-represented. Also at the

hearing were the GAL and Ms. Hampton, who was represented by counsel. Mr. Williams said that he did not have any issue with continuing the hearing, but that he was concerned with Ms. Hampton's motion to further restrict his parenting time, which was already so restricted. Mr. Williams said he "would like to have a hearing eventually on the parenting time as well as the order of protection" but that "this [wa]s an emergency regarding [his] son" and he "d[id]n't have a problem with continuing it."

¶ 28    The GAL then asked the court to halt communications between Mr. Williams and D. until she received further information from D.'s treating doctor. The court said it was stopping Mr. Williams's parenting time until further order of the court "based on [the GAL]'s request," but was still not granting Ms. Hampton's motion; the court instead "stayed" Ms. Hampton's motion and Mr. Williams's parenting time. The result of this however, was that Mr. Williams was not allowed to have parenting time with his son either in person or by video.

¶ 29    On March 30, 2022, the circuit court struck the hearing date for the plenary order of protection, set the case for status on the GAL's investigation of D.'s well-being on April 14, 2022, stayed Mr. Williams's video parenting time "until further order of the court," and again extended the emergency order of protection.

¶ 30    On April 20, 2022, Mr. Williams filed his notice of appeal in the circuit court, appealing from the court's orders of January 27, 2020, and March 30, 2022.

¶ 31    On May 9, 2022, the court again extended the emergency order of protection, continued the case, and entered an order continuing all matters "generally pending the appeal filed by [Mr. Williams]."

¶ 32                                                II. JURISDICTION

¶ 33    On April 20, 2022, Mr. Williams filed his notice of appeal from the court's orders of March 30, 2022, and January 27, 2020. In his brief, Mr. Williams states that we have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), which both govern appeals from final orders in civil cases, as well as Rule 306 (eff. Oct. 1, 2020), governing permissive interlocutory appeals. Ms. Hampton has not filed a brief in response to this appeal, and on May 24, 2023, we entered an order taking the case on Mr. Williams's *pro se* brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 ("if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal").

¶ 34    Although there is no opposing party to contest jurisdiction, we have an independent duty to ascertain our jurisdiction. *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 41. If we lack jurisdiction, we must dismiss the appeal. *Archer Daniels Midland v. Barth*, 103 Ill. 2d 536, 539 (1984).

¶ 35    A final order is one that "terminates the litigation between the parties or disposes of their rights on some definite, separate part of the litigation." *Knox v. Keene Corp.*, 210 Ill. App. 3d 141, 144 (1991). Here, the orders Mr. Williams challenges were not final orders because they neither terminated this litigation nor disposed of some definite, separate part of it. We therefore do not have jurisdiction pursuant to Rule 301 and Rule 303.

¶ 36    Rule 306, governing "Interlocutory Appeals by Permission," also does not give us jurisdiction over this appeal. Rule 306(a)(5) allows a litigant to file a petition for leave to appeal

"interlocutory orders affecting the care and custody of or the allocation of parental responsibilities for unemancipated minors ***." Ill. Sup. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). Mr. Williams did not file a petition for leave to appeal under Rule 306, he filed a notice of appeal, and thus we do not have jurisdiction under Rule 306. Ill. Sup. Ct. R. 306(a)(5), (b)(1), (b)(5) (eff. Oct. 1, 2020).

¶ 37    However, we have jurisdiction over the appealed orders under Rule 307(a)(1) (eff. Nov. 1, 2017). That rule provides an appeal as of right to an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." We have recognized that this rule applies "to interlocutory injunction orders that merely preserve the status quo pending a decision on the merits, conclude no rights, and are limited in duration, in no case extending beyond the conclusion of the action." *Santella v. Kolton*, 393 Ill. App. 3d 889, 903 (2009). In deciding whether an order is an appealable under Rule 307(a)(1), " 'we look to the substance of the action, not its form.' " *In re Marriage of Padilla and Kowalski*, 2017 IL App (1st) 170215, ¶ 17 (quoting *A Minor*, 127 Ill. 2d at 260). " 'Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else.' " *Id.* (quoting *A Minor*, 127 Ill. 2d at 260). In Illinois, we "broadly construe the meaning of the term 'injunction' under Rule 307(a)(1)" and we "have held that an order of protection is an injunctive order because it directs a person to refrain from doing something." *Fricke v. Jones*, 2021 IL App (5th) 200044, ¶¶ 18, 22.

¶ 38    There is no question that the emergency order of protection directed Mr. Williams to refrain from having any contact at all with D. But as with all appeals, an appeal from an order pursuant to Rule 307(a) must be filed within 30 days of the order's entry. Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017). Mr. Williams did not timely appeal from the entry of the original emergency order of protection, entered in January 2020.

¶ 39    Mr. Williams did, however, timely appeal from the court's orders of March 30, 2022, in which the court again extended the emergency order of protection and stayed Mr. Williams's supervised video parenting time with his son. This court has found that orders which extend an emergency order of protection also constitute injunctive orders for purposes of Rule 307(a)(1) appeals because "orders pertaining to the expiration of the emergency order of protection concern matters that affect the parties' everyday life, apart from their litigation." *Fricke*, 2021 IL App (5th) 200044, ¶¶ 20-21. Here, although Mr. Williams agreed to continue the case at the March 30, 2022, hearing, he did not agree to having his parenting time stayed. The court's orders of March 30, 2022, affected Mr. Williams's rights apart from the litigation by preventing him from having any interaction with D. and were, in effect, the modification of an injunctive order. Mr. Williams timely filed a notice of appeal from those orders and we thus have jurisdiction to review them under Rule 307(a)(1).

¶ 40    In addition, Illinois courts have found that "Rule 307 allows [the appellate court] to review any prior error that bears directly upon the question of whether an order on appeal was proper." (Internal quotation marks omitted.) *Fricke*, 2021 IL App (5th) 200044, ¶ 25. Although Mr. Williams did not timely appeal from the January 27, 2020, orders in this case, any error with respect to those orders bears directly upon the question of whether the court's orders of March 30, 2022, were proper. Accordingly, we also have jurisdiction over the January 27, 2020, orders.

¶ 41                                III. ANALYSIS

¶ 42    Turning to the substance of the appeal, Mr. Williams argues that the circuit court erred by (1) granting the emergency order of protection without a court reporter to keep a record of the hearing on January 27, 2020; (2) modifying his parenting time pursuant to an emergency motion

on the same day when he had not received notice; and (3) failing to conduct a hearing on the plenary order of protection. We consider each issue in turn.

¶ 43    First, Mr. Williams argues that it was error to grant an emergency order of protection without a court reporter present to transcribe the hearing. He relies on Illinois Supreme Court Rule 402(e) (eff. July 1, 2012), which governs transcripts with respect to "Pleas of Guilty or Stipulations Sufficient to Convict" and provides that "[i]n cases in which the defendant is charged with a crime punishable by imprisonment in the penitentiary, the proceedings required by this rule to be in open court shall be taken verbatim ***." But Mr. Williams is not pleading guilty to any crime and these proceedings were entirely civil, so Rule 402(e) is not applicable.

¶ 44    Mr. Williams also cites section 214(c)(4) of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/214(c)(4) (West 2020)). Article II governs the procedures for orders of protection, emergency or otherwise. See 750 ILCS 60/201-227.1 (West 2020). Subsection (c) of section 214 pertains to the required findings for an order of protection, and section 214(c)(4) provides for a specific procedure that the court may use "[f]or the purposes of issuing an *ex parte* emergency order of protection *** as an alternative to or as a supplement to making the findings described" in the subsection. *Id.* § 214(c)(4). However, nothing in section 214 requires a court reporter to transcribe proceedings for an *ex parte* emergency order of protection, nor have we found any such requirement elsewhere in the Domestic Violence Act. Compare 750 ILCS 60/214 with 750 ILCS 5/604.10(a) (West 2020) (if a court interviews a child in chambers "to ascertain the child's wishes as to his allocation of parental responsibilities," the interview "shall be recorded by a court reporter"). Without a clear statutory requirement for a court reporter to be present at proceedings on an *ex parte* emergency order of protection, we find no error.

¶ 45    Mr. Williams next argues that the court erred in modifying his parenting time at the same time the emergency order of protection was ordered without providing him with notice. However, the grant of physical care or possession of the minor child to the petitioner and restricting or denying the respondent's parenting time are both remedies available under an order of protection. 750 ILCS 60/214(b)(5), (b)(7) (West 2020). So, although the circuit court entered two separate orders on January 27, 2020—the emergency order of protection and the suspension of Mr. Williams's parenting time—the modification to Mr. Williams's parenting time was part of the emergency order of protection. In addition, section 217 specifically provides that notice to the respondent is not required before the issuance of an emergency order of protection: it states that "[a]n emergency order of protection shall issue" "regardless of prior service of process or notice upon the respondent ***." *Id.* § 217(a)(3). Accordingly, the circuit court did not err by entering its January 27, 2020, order before notice was given to Mr. Williams.

¶ 46    Finally, Mr. Williams argues that the circuit court erred by failing to conduct an evidentiary hearing on the plenary order of protection. We agree that Mr. Williams is entitled to a full evidentiary hearing. The Domestic Violence Act provides that "[a] plenary order of protection shall issue if petitioner has served notice of the hearing for that order on respondent" and satisfies other requirements. *Id.* § 219. The emergency order of protection in this case was issued over three-and-a-half years ago and there has yet to be a hearing on a plenary order of protection.

¶ 47    However, from the record it is clear that there were many reasons for this significant delay, including the COVID-19 epidemic, Mr. Williams's apparent refusal to cooperate with the court's section 604.10 evaluation, and the present appeal. But throughout this time Mr. Williams has had very limited parenting time with his child. Mr. Williams and Ms. Hampton have told very different

stories about what has been occurring with D. and only with an evidentiary hearing can the court begin to sort out the factual discrepancies. Although we find no error on this record, we remand with a directive to the circuit court to conduct a plenary hearing as soon as reasonably possible.

¶ 48    We note that a recording of the forensic interview D. had at CAC is included in the record on appeal. We have reviewed it but have avoided discussion of its contents because of the protective order entered by the circuit court over these subpoenaed records and in the interest of D.'s privacy. Of course, the circuit court will review it as part of the evidentiary hearing on remand.

¶ 49                                    IV. CONCLUSION

¶ 50    For the foregoing reasons, the orders of the circuit court are affirmed and this case is remanded with the directive to schedule and hold a prompt evidentiary hearing.

¶ 51    To avoid any further delay, the mandate in this case shall issue immediately.

¶ 52    Affirmed and remanded with directions. Mandate to issue immediately.