STEEL CITY BANK, as Trustee, *et al.*, Plaintiffs and Counterdefendants-Appellees, v. THE VILLAGE OF ORLAND HILLS *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (1st Division)   No. 1—90—0059

Opinion filed December 30, 1991.

Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson and Mark H. Sterk, of counsel), for appellants.

Callahan, Fitzpatrick, Lakoma & McGlynn, of Oak Lawn (William F. Fitzpatrick and Ronald V. Hirst, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendants-counterplaintiffs[1] Village of Orland Hills, village president Lorin Schab and village building commissioner Ronald Zaylik appeal the judgment of the circuit court of Cook County ordering them to issue building and occupancy permits to plaintiffs Hartz Construction Company (Hartz) and Steel City National Bank.

Plaintiff Steel City National Bank, as the trustee of trust number 2955, is the fee simple owner of a tract of land in Orland Hills, Illinois. The sole beneficiary of the trust is Hartz, a construction and real estate development company, which has subdivided the tract into units known as Ridgegate Units I through VII. According to plaintiffs' brief, Hartz has already developed most of Ridgegate Units I through IV with single-family homes and is in the process of developing Ridgegate Unit VII.

In February 1989, plaintiffs filed a complaint against defendants seeking injunctive and monetary relief from Orland Hills' refusal to issue building and occupancy permits to Hartz. Orland Hills answered, stating that the permits were not issued because one of Hartz's purchasers stopped payment on a $1,000 check tendered to Orland Hills for a temporary occupancy permit. On February 15, 1989, Hartz moved for a temporary restraining order (TRO) and preliminary injunction based on the complaint and answer. Following a hearing that same day, the trial court issued a TRO restraining defendants from refusing to issue building permits to Hartz and from refusing to inspect Hartz's completed work.

---

[1]As the counterclaims are not before this court, defendants-counterplaintiffs and plaintiffs-counterdefendants are hereinafter referred to respectively as defendants and plaintiffs, for the sake of brevity.

The TRO was continued by agreement of the parties until September 25, 1989. At this time, the court granted Orland Hills leave to file a counterclaim and a motion for a preliminary injunction seeking to prevent Hartz from further construction until Hartz posted letters of credit with Orland Hills insuring the completion of public improvements in Ridgegate. Orland Hills alleged that letters of credit previously posted by Hartz for Ridgegate Units I through IV had expired. In the same order, the trial court limited the TRO to permits regarding grass and landscaping matters and granted plaintiffs leave to amend their complaint.

On October 23, 1989, plaintiffs filed a four-count amended complaint. Count I repeated the allegations regarding the refusal to issue permits contained in the initial complaint. Count II sought *mandamus* and declaratory and monetary relief regarding the alleged refusal of Orland Hills to approve a plat of subdivision for Ridgegate Unit VII. Count III alleged that Orland Hills had violated Hartz's right to due process guaranteed by the fourteenth amendment to the United States Constitution and sought relief under 42 U.S.C. §1983 (1988). Count IV sought to invalidate ordinances adopted by Orland Hills which allegedly violated an agreement between Orland Hills and Hartz that Orland Hills was required to seek input from Hartz before amending ordinances relating to Hartz's subdivisions.

According to defendants' brief, Hartz served Orland Hills with an amended motion for a TRO in November 1989. The amended motion, attached to defendants' brief, requested permanent relief in addition to temporary and preliminary relief. The record indicates that the trial court ordered Orland Hills to issue a temporary occupancy permit for 17007 S. 92nd Avenue, Orland Hills, Illinois, on November 25, 1989.

The trial court continued its hearing on the motion on December 4, 1989. Orland Hills objected, arguing that equitable relief was unavailable because Hartz could seek the legal remedy of *mandamus.* The trial court did not rule on this objection and proceeded to hear argument on a number of issues in the case.

The trial court first heard Hartz's claim that Orland Hills wrongfully refused to approve the plat of subdivision for Ridgegate Unit VII. Orland Hills argued that its refusal was based on Hartz's failure to: (1) finish and seeding and grading water detention basins; (2) post letters of credit guaranteeing completion of the detention basins and other public improvements; and (3) transfer property in Ridgegate Unit V to Orland Hills for the purpose of creating a park. Hartz indicated that it could obtain and transfer the deed for the property in

Ridgegate Unit V and tendered letters of credit to Orland Hills in court.

The trial court then heard argument and testimony regarding Orland Hills' failure to issue building and occupancy permits. Hartz identified four properties for which building permits had not yet been issued. Orland Hills responded that the permits had not been issued due to Hartz's prior failure to post letters of credit, but because the letters had been tendered in court, the permits could be issued within 14 or 15 days.

Next, Hartz identified four different homes for which it sought occupancy permits: 9013 Westwood Drive, 9207 W. 170th Place, 9209 W. 170th Street and 9007 Westwood Drive. Orland Hills indicated that 9013 Westwood had been inspected and that a permit could be issued after payment of a $45 fee; the question of whether the fee was required was reserved for a future hearing. Orland Hills' village engineer testified that final grading of 9207 W. 170th Place and 9209 W. 170th Street had not been approved and recommended that Hartz post a cash bond to ensure that the grading would be satisfactorily completed. Defendant Schab testified that the home owners had been posting escrows in similar situations because Hartz had refused to do so. Finally, Orland Hills asked that it be given seven days to inspect and issue an occupancy permit for 9007 Westwood.

At the close of the December 4, 1989, hearing, the trial court issued an order providing:

"1. Upon deposit of letters of credit for Units 2, 3, 4 & 7 in Ridgegate with the Clerk of Court the Village of Orland Hills shall execute the Plat of Subdivision for Ridgegate VII within 10 days and permit plaintiff to immediately secure building permits simultaneously with the construction of public improvements in said Unit VII.

2. Plaintiff shall deliver a deed to Orland Hills to the retention pond area in Unit 5 in Ridgegate subdivision within 30 days of the date of this order.

3. Defendant Village of Orland Hills shall issue building permits for the following addresses within 14 calendar days of the date of this order: 9200 W. 170th St., 16933 S. 92nd Ave., 9124 W. 169th Pl., 9133 W. 170th St.

4. Defendant Village of Orland Hills shall issue occupancy permits within 7 calendar days of the date of this order with respect to the following addresses (except 9013): 9207 W. 170th Pl., [9013 Westwood Dr. to be issued immediately], 9007 Westwood Dr., 9209 170th St.

5. Escrows for final grade, if required, shall be posted by the purchasers, and shall not be required of plaintiff Hartz Construction. Said escrows shall not exceed $200.00

6. Cause continued for status to 12/20/89 at 10:00 a.m."

On January 3, 1990, Defendants filed a notice of interlocutory appeal. Defendants did not move for a stay pending their appeal. On January 22, 1990, the trial court entered an order acknowledging that Hartz delivered to Orland Hills the deed referred to by paragraph two of the December 4, 1989, order.

The first issue raised by this appeal, though not by the parties, is whether this court has jurisdiction. The question of jurisdiction of the appellate court must be determined prior to deciding the merits of an appeal. (*Servio v. Paul Roberts Auto Sales, Inc.* (1991), 211 Ill. App. 3d 751, 755, 570 N.E.2d 662, 664; *Mar Cement, Inc. v. Diorio Builders, Inc.* (1987), 153 Ill. App. 3d 798, 800, 506 N.E.2d 381, 383.) Indeed, it is the duty of this court to consider even matters *dehors* the record in deciding this issue. (*Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 430 N.E.2d 139.) Where this court lacks jurisdiction, we must dismiss the appeal; as noted in other contexts, our courts do not sit to render advisory opinions on abstract questions of law to guide potential future litigation. *Cf. La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486 (discussing mootness).

■ Defendants' brief states that the appeal is brought pursuant to Illinois Supreme Court Rule 307 (134 Ill. 2d R. 307). Rule 307(a)(1) provides that appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (134 Ill. 2d R. 307(a)(1).) An interlocutory injunction is granted to preserve the status quo pending a decision on the merits and concludes no rights. (See *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 481, 368 N.E.2d 990, 993; *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011, 326 N.E.2d 180, 183.) Such orders are either preliminary injunctions or temporary restraining orders, which are limited in duration and in no case extending beyond the conclusion of the action. *Smith v. Goldstick* (1982), 110 Ill. App. 3d 431, 438, 442 N.E.2d 551, 557.

■■ Whether an order falls within the scope of Rule 307 is determined by its substance rather than its form or language. (See *In re Marriage of Meyer* (1990), 197 Ill. App. 3d 975, 979, 557 N.E.2d 242, 245; *Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.* (1980), 91 Ill. App. 3d 1118, 1121, 415 N.E.2d 625, 627.) Because the rule is addressed only to interlocutory orders, the order appealed

from must not be in the nature of a permanent injunction. (See *Betts v. Ray* (1982), 104 Ill. App. 3d 168, 170, 432 N.E.2d 1222, 1224.) If an injunction is permanent in nature, it is a final order appealable only under Rule 301 or 304(a), if those rules are otherwise applicable. (*Goldstick*, 110 Ill. App. 3d at 438, 442 N.E.2d at 556.) Whether the injunction disposes of the entire litigation is not determinative of its permanent or preliminary nature. (See *Statistical Tabulating Corp. v. Hauck* (1972), 5 Ill. App. 3d 50, 51, 282 N.E.2d 524, 525.) Orders which are not limited in duration and which alter the status quo are permanent in nature. See *Goldstick*, 110 Ill. App. 3d at 438, 442 N.E.2d at 557.

■ Defendants contend that the December 4, 1989, order is a mandatory preliminary injunction. Generally, mandatory preliminary injunctions are properly granted only to preserve the status quo where to do otherwise may cause irreparable harm to the party seeking the injunction. (*Martin v. Eggert* (1988), 174 Ill. App. 3d 71, 77, 528 N.E.2d 386, 390.) The status quo is defined as "the last actual, peaceable, uncontested status which [preceded] the pending controversy." (*Martin*, 174 Ill. App. 3d at 77, 528 N.E.2d at 390.) A party may not obtain such injunctive relief where a legal remedy, such as *mandamus*, is available. *Lyle v. City of Chicago* (1934), 357 Ill. 41, 45, 191 N.E. 255, 257.

Defendants argue that the order at issue did not preserve the status quo; their brief states:

> "The last actual, peaceable, uncontested status in this case was that Hartz had four houses for which it had no occupancy permits and four lots for which it had no building permits.
>
> Now, of course, the four lots are probably under construction and the four houses have occupants. The status quo *** can be fully restored only by evicting the occupants of the four houses."

The passage of two years from the entry of the order without a stay and the statements of counsel at oral argument suggest that this characterization of the situation is accurate.

■ The record indicates that the December 4, 1989, order is not limited in duration. The order requires that building and occupancy permits be issued, unlike the temporary occupancy permit previously ordered by the trial court. It requires Hartz to deed property over to defendants. The order excuses Hartz from paying escrows, placing that obligation on purchasers. Defendants have failed to point to anything in the record, aside from prefatory language in the order, which

indicates that these portions of the order were intended as temporary measures.

In sum, the record indicates that the substance of the order is a permanent mandatory injunction which cannot be appealed under Rule 307(a)(1). The order continues the cause, rendering it unappealable under Rule 301. The order does not contain a Rule 304(a) finding. Thus, we lack jurisdiction over this appeal. *Goldstick*, 110 Ill. App. 3d at 438, 442 N.E.2d at 557.

For the aforementioned reasons, this appeal is dismissed for want of jurisdiction.

Dismissed.

BUCKLEY and O'CONNOR, JJ., concur.