NOTICE

Decision filed 03/02/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241103-U

NO. 5-24-1103

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE VANDALIA LEVEE & DRAINAGE DISTRICT, | ) ) ) | Appeal from the Circuit Court of Fayette County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08-CH-19 |
| PARISH HOLDINGS, LP, | ) ) | |
| Defendant-Appellee, | ) ) | |
| and | ) ) | |
| FRED KECK, GUARANTEED AIR FREIGHT FORWARDING, INC., and KASKASKIA LAND COMPANY, LLC (formerly known as Keck Land Company, LLC), | ) ) ) ) | |
| | ) ) | Honorable Douglas C. Gruenke, |
| Defendants. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore* and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We find that this court has jurisdiction to hear Vandalia Levee and Drainage District's motion seeking to modify a 2014 injunction. We find that the circuit court did not abuse its discretion in denying Vandalia Levee and Drainage District's motion seeking to modify a 2014 injunction. We find that there was no genuine

_____

*Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

issue of material fact and affirm the circuit court's order granting summary judgment to Parish Holdings, LP on the issue of damages. We find that the circuit court did not abuse its discretion in denying Vandalia Levee and Drainage District's request for a default judgment against Parish Holdings, LP. We find that the circuit court did not abuse its discretion in denying Vandalia Levee and Drainage District's motion for sanctions against Parish Holdings, LP pursuant to Supreme Court Rule 137(a) (Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018)). We find that the circuit court did not abuse its discretion in denying Vandalia Levee and Drainage District's motion for leave to seek punitive damages against Parish Holdings, LP.

¶ 2 The Vandalia Levee and Drainage District (the Levee District) maintains a system of levees in the Kaskaskia River floodplain dating back to 1903. The Levee District protects approximately 12,000 acres of farmland in that floodplain. Litigation began in 2008, when the Levee District filed an action against Fred Keck (Keck), others hereafter designated as the "Keck Defendants," and Parish Holdings, L.P. (Parish Holdings) seeking injunctive relief and damages resulting from the construction and maintenance of certain levees. The Levee District contended that Keck and the Keck Defendants were liable for illegally constructing and maintaining the levees during their ownership of the land and that Parish Holdings was liable as the subsequent purchaser of a portion of the land where some of Keck's levees remained.

¶ 3 In February 2019 the circuit court entered summary judgment on liability in favor of Parish Holdings. In January 2020 this court reversed the circuit court's judgment for Parish Holdings and remanded for further proceedings to determine if Parish Holdings bore any responsibility for damages sustained by the Levee District. *Vandalia Levee & Drainage District v. Keck*, 2020 IL App (5th) 190109-U. Pending the outcome of the appeal of Parish Holdings' summary judgment ruling, the Levee District initiated and obtained a monetary settlement of its claims from Keck and the Keck Defendants, who agreed to a total payment of $915,000 to settle the Levee District's claims in exchange for dismissal of the pending litigation, with prejudice. The circuit court approved this settlement in May 2024.

2

¶ 4    After a series of motions and responses filed by the Levee District and Parish Holdings, Parish Holdings filed a motion for summary judgment in July 2024 arguing that the $915,000 settlement paid by Keck and the Keck Defendants satisfied any damages Parish Holdings owed to the Levee District. Thereafter in September 2024 the circuit court granted Parish Holding's motion for summary judgment. For the following reasons, we affirm.

¶ 5    As a preliminary matter we address a portion of the Levee District's brief that we find to be inconsistent with the specific guidelines established by our Illinois Supreme Court. Supreme Court Rule 341(h) sets forth requirements for an appellant's brief. Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). Rule 341(h)(8) provides that the appellant must provide: "A short conclusion stating the precise relief sought, followed by the names of counsel as on the cover [of the brief]." Ill. S. Ct. R. 341(h)(8) (eff. Oct. 1, 2020). Here, the Levee District's counsel ended her appellant's brief with a section entitled, "Concluding Remarks." The lengthy paragraph preceding the "conclusion stating the precise relief sought," is inappropriate and does not comply with the requirements of Rule 341(h)(8). Accordingly, we strike the offending portion of the appellant's "Concluding Remarks."

¶ 6                              I. BACKGROUND

¶ 7    Keck owned approximately 500 acres on Pecan Island—part of the Kaskaskia River floodplain—and he rebuilt or repaired levees that were constructed before he bought the land. By 2010 when this case went to bench trial, Keck no longer directly owned any acreage on Pecan Island, and instead leased farmland from Parish Holdings (an entity in which Keck had a 38% interest). He farmed approximately 450 acres and managed a waterfowl hunting club on Pecan Island.

¶ 8    The Levee District's case against Keck, the Keck Defendants, and Parish Holdings was tried on August 23-27, 2010, following which the circuit court entered judgment in favor of the defendants. The Levee District appealed and this court reversed, concluding that the Levee District established that the defendants' conduct relative to the levees established a nuisance; that the circuit court erred in finding the defendants' conduct in designing and/or building the levees was reasonable because the defendants made no effort to determine "what impact their levees would *** have on neighboring properties or to take any steps to minimize that impact" including the failure to seek a statutorily mandated permit from the Illinois Department of Natural Resources and the failure to obtain an engineer's opinion "regarding the potential impact of the levees on neighboring properties" (*Vandalia Levee & Drainage District v. Keck*, 2012 IL App (5th) 100564-U, ¶ 42); that the Levee District established that it had acquired a prescriptive easement to Pecan Island; that the Levee District established that the damage to the levees was caused by the defendants' conduct; and that the circuit court's refusal to grant the Levee District's request for injunctive relief was erroneous because there was no adequate remedy at law and leaving the levees in place would continue to cause problems and necessitate multiple suits. *Vandalia Levee & Drainage District*, 2012 IL App (5th) 100564-U, ¶ 49.

¶ 9    On remand, the case was retried in 2014. At the conclusion of that trial, Keck, Parish Holdings, and the Keck Defendants, were enjoined to remediate Keck's levees on Pecan Island, while the determination of monetary damages was reserved. The mandated remediation was completed on September 9-10, 2014.

¶ 10    During this case's procedural history, the circuit court established a "Recovery Period" as the period for which monetary damages could be recovered by the Levee District. The specified period was from April 18, 2003, until September 11, 2014. The start date of the period was five

4

years before the Levee District filed this suit, and the Recovery Period ended on the date after the September 2014 court-ordered remediation work was completed.

¶ 11    In 2018, Parish Holdings sought a partial summary judgment as a subsequent purchaser from Keck, arguing that it had no responsibility for any damages claimed by the Levee District relative to Keck's construction and maintenance of the Pecan Island levees. The circuit court granted Parish Holdings' motion for summary judgment in 2019, and the Levee District appealed.

¶ 12    While that appeal was pending, on August 27, 2019, the circuit court granted judgment in favor of the Levee District and against Keck and the Keck Defendants in the amount of $565,458.

¶ 13    After considering the Levee District's appeal of the 2019 summary judgment in Parish Holdings' favor, this court reversed and remanded the case for further proceedings to determine if Parish Holdings had any responsibility for damages claimed by the Levee District because of Keck's original creation of a nuisance on Pecan Island and Parish Holdings' assumption of Keck's lease. *Vandalia Levee & Drainage District*, 2020 IL App (5th) 190109-U, ¶ 38. This court stated: "when Parish entered into its revised lease with Keck in 2008, this lawsuit had been filed, thus putting Parish on notice that there were allegations of nuisance associated with the levees on the leased property." *Id.* ¶ 35.

¶ 14    Before the Levee District's monetary damages claim against Parish Holdings could be tried, the Levee District started a collection action against Keck and the Keck Defendants, and filed numerous other motions involving the liability of all defendants relative to the 2014 injunction for remediation—seeking to modify the injunction; seeking additional damages; seeking a default judgment; seeking procedural sanctions; and seeking leave to add a claim for punitive damages.

5

¶ 15    On May 7, 2021, the circuit court found that the Levee District failed to allege facts that there had been a change in the condition of the property after the completion of the court-ordered levees' remediation. On May 12, 2021, the Levee District amended its motion on this issue and asked the court to construe it as a motion for reconsideration of the May 7, 2021, order. Thereafter, Keck and the Keck Defendants compromised and settled the Levee District's claims for a collective total sum of $915,000 in exchange for dismissal of all pending litigation with prejudice between the Levee District and Keck and the Keck Defendants. On May 28, 2024, the circuit court approved the settlement and found that there was no just reason to delay the enforcement or appeal of that order. The order approving the settlement became final on June 27, 2024.

¶ 16    Subsequently, Parish Holdings filed a motion to strike the Levee District's May 2021 amended motion to modify the circuit court's May 2014 injunction. During the June 14, 2024, hearing on Parish Holdings' motion to strike, the circuit court noted that the remedial action required by the original injunction was completed 10 years earlier. The circuit court concluded that the Levee District failed to allege any actionable change in the circumstances presented by the Pecan Island levees justifying modification of the earlier injunction and dismissed the Levee District's claim against Parish Holdings.

¶ 17    The Levee District had five remaining motions alleging that Parish Holdings was liable for monetary damages. Parish Holdings responded to these motions and on July 31, 2024, filed its second motion seeking summary judgment. Parish Holdings argued that the $915,000 settlement paid to the Levee District by Keck and the Keck Defendants fully and completely satisfied any compensatory obligation Parish Holdings would ever owe to the Levee District regardless of any remaining claims the Levee District wanted to pursue.

¶ 18    On August 23, 2024, the circuit court held a hearing on all remaining motions. The circuit court denied the Levee District's motion to reconsider its request to modify the 2014 injunction because the Levee District provided no facts establishing a change in the levees' condition. The court took Parish Holdings' motion for summary judgment under advisement.

¶ 19    On September 16, 2024, the circuit court granted Parish Holdings' summary judgment motion concluding that it did not owe the Levee District monetary damages. The court concluded that the Levee District was limited to the same $565,458 in damages that Keck and the Keck Defendants were previously ordered to pay and that Parish Holdings would be entitled to a setoff up to that amount. The court also noted that Keck and the Keck Defendants had actually paid over $900,000 to satisfy the amount owed to the Levee District for the "Recovery Period." Moreover, the court noted that the Levee District had openly stated that it was not seeking compensation from Parish Holdings for damages incurred during the court-determined "Recovery Period." The court stated that the Levee District dismissed its claims against all defendants, except Parish Holdings, and noted that "even if *** [the Levee District] held a judgment against *** [Parish Holdings], [it] would be unable to collect the judgment from *** [Parish Holdings] because *** [the Levee District] has already collected its judgment, and then some." On that basis, the circuit court denied and dismissed any claim that the Levee District had against Parish Holdings for damages during the Recovery Period.

¶ 20    The circuit court then turned to the issue of "continuing damages" after the Recovery Period. The Levee District contended that it could recover damages from Parish Holdings because Parish Holdings was the only remaining party and damages were not limited by the court's previous monetary judgment. The court noted that Parish Holdings participated in initial injunctive relief and performed work pursuant to that injunction. The court concluded that Parish Holdings

7

was therefore "not liable for any additional money damages, after the Recovery Period, absent some other action *** [Parish Holdings] took after the Recovery Period." The court indicated that the Levee District was asking to modify the injunction but denied that request because it failed to allege any change in circumstances or conditions after the completion of the court-ordered remediation required by the injunction. As the Levee District failed to appeal the injunction, the court stated that the Levee District therefore presumed that damages due to the defendants' actions ceased upon the completion of the remediation. The Levee District "has not alleged that *** [Parish Holdings] has taken any action after the completion of that work to subject itself to any further liability." The court entered summary judgment in favor of Parish Holdings.

¶ 21   The Levee District appeals from the circuit court's September 16, 2024, final order entering summary judgment for Parish Holdings; the circuit court's August 23, 2024, oral denials of five motions filed by the Levee District;[1] the circuit court's June 14, 2024, written order plus any oral rulings on that date; the May 6, 2021, dismissal of the Levee District's July 23, 2020, request for injunctive relief; the May 22, 2014, injunctive order; and generally seeking reversal of all circuit court rulings inconsistent with the "law of the case."

¶ 22                                    II. ANALYSIS

¶ 23        A. Jurisdiction Over the Levee District's 2014 Injunction Order Claims

¶ 24   The Levee District appeals the circuit court's denial of its motion to modify the 2014 injunction. Parish Holdings argues that this court lacks jurisdiction to consider the merits of the Levee District's claims because the 2014 injunction was interlocutory in nature and/or because the

---

[1]The five motions orally denied include (1) denying motion to reconsider denial of motion to modify the 2014 injunction; (2) denying default summary judgment motion for $580,198 in damages where Parish Holdings failed to respond to the motion; (3) denying motion to accept judgment for uncontested damages of $580,198 against Parish Holdings and denial of request for evidentiary hearing on punitive damages; (4) denying request for sanctions for violation of the law of the case doctrine; and (5) denying the Levee District's motion to accept proposed injunctive relief order based on uncontested expert testimony.

injunction was final in 2014. The Levee District contends that the 2014 injunction order was not a final judgment and thus, the 2014 injunction could not be appealed until the circuit court entered its September 15, 2024, final judgment. "An appellate court is under a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking." *Craine v. Bill Kay's Downers Grove Nissan*, 354 Ill. App. 3d 1023, 1024 (2005).

¶ 25 The circuit court entered its May 22, 2014, injunctive order as directed by this court's order. *Vandalia Levee & Drainage District*, 2012 IL App (5th) 100564-U. We determined that the Levee District had a prescriptive easement to flood Pecan Island (*id.* ¶ 44), and stated that while the Levee District had an adequate legal remedy, injunctive relief was needed "to provide adequate redress," and concluded by declaring that "if the levees remain in place, they will continue to cause problems for the plaintiffs, thereby requiring multiple suits." *Id.* ¶ 49.

¶ 26 Thereafter, on May 21, 2014, the circuit court entered the following orders:

"1. Each owner of property on Pecan Island shall cause to be removed, at their expense, two portions (hereafter 'gaps') of the Pecan Island levees found on their property.

2. Each gap will be no less than fifty feet wide at the base.

3. The first gap shall be no less than one-eighth (1/8) of a mile from the northern edge of the property owners['] property line.

4. The two gaps shall be separated by at least one-quarter (1/4) of a mile.

5. The material removed from the Pecan Island levees shall be either entirely removed from the site or scattered in such a manner as to avoid creating another obstruction to the flow of water.

6. The parties are to cause the completion of the demolition required by this order within 45 days of the entry of this order.

9

7. the issue of damages is reserved pending further order of this court."

Following entry of this order, Parish Holdings and other named defendants timely completed the remediation work specified in the court's injunction.

¶ 27    Parish Holdings contends that the Levee District had 30 days from May 22, 2014, to appeal the injunctive order after which the injunction was no longer appealable. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). In response, the Levee District contends that this court's jurisdictional authority is derived solely from Rule 301 and Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), and that the injunction was not final and appealable until the conclusion of this case—on September 16, 2024.

¶ 28    We briefly review the wording of these three Illinois Supreme Court rules. Rule 301 provides: "Every final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional. An appeal is a continuation of the proceeding." Ill. S. Ct. R. 301 (eff. Feb 1, 1994). Rule 301 works with Rule 303(a)(1) which provides: "The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from ***." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Rule 307(a)(1) involves permissive interlocutory appeals. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). An interlocutory appeal is an appeal "([o]f an order ***) interim or temporary; not constituting a final resolution of the whole controversy." Black's Law Dictionary (12th ed. 2024). Rule 307(a)(1) permits an interlocutory appeal, stating: "An appeal may be taken to the Appellate Court from an interlocutory order of court (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction ***." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017).

¶ 29    The Levee District argues that the 2014 injunctive order was not final when entered. We agree. "A final order is one which 'disposes of the entire controversy on the merits, so that, if

10

affirmed, the trial court need only proceed with execution of judgment' [citation], and there is no finality 'if the court retains jurisdiction for future determination of matters of substantial controversy' [citation]." *Smith v. Goldstick*, 110 Ill. App. 3d 431, 436-37 (1982). The May 21, 2014, injunctive order reserved the issue of the Levee District's monetary damages "pending further order of this court." Additionally, the timeframe by which the defendants were mandated to complete the remediation work fell outside of the 30-days, and thus the trial court implicitly reserved the right to make any necessary orders outside of the 30-day appeal window if the work was not completed as ordered.

¶ 30    "Whether an order falls within the scope of Rule 307 is determined by its substance rather than its form or language." *Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 416 (1991). As Rule 307 only pertains to interlocutory orders, "the order appealed from must not be in the nature of a permanent injunction." *Id.* at 416-17. If the injunctive order is permanent in nature, the order is therefore final and "appealable only [pursuant to] Rules 301 or 304(a)." *Id.* at 417. A permanent order is not limited in duration. *Id.* at 417. If the injunction is not limited in its scope and duration, but served to preserve the status quo, the injunction was appealable pursuant to Rule 307(a)(1). *Smith*, 110 Ill. App. 3d at 438.

¶ 31    We conclude that the injunctive order was not final and appealable by its very wording because of the deferred issue of damages, and the circuit court's ordered remediation with a time frame outside of the 30 days. Accordingly, we find jurisdiction to hear the Levee District's claim relative to the 2014 injunction order.

¶ 32          B. The Levee District's Motion to Modify the 2014 Injunction

¶ 33    The Levee District seemingly breaks this issue into two separate arguments. First, the Levee District argues that the circuit court erred in its 2014 injunction by not ordering removal of

11

specific levee stretches it claims it established as the proximate cause of the damages. Second, the Levee District contends that the circuit court erred in denying its motions to modify the injunction.

¶ 34    In 2012, this court ordered the circuit court to enter injunctive relief for the Levee District. See *Vandalia Levee & Drainage District*, 2012 IL App (5th) 100564-U, ¶ 49. In 2018, the circuit court entered an order stating that the court would not be addressing the issue of the adequacy of the previously-ordered injunctive relief, but that the case would proceed to determine the amount of monetary damages each defendant owed the Levee District. On February 13, 2019, the circuit court entered an order denying all motions filed by the Levee District that either related to postjudgment relief from, or modification of, the 2014 injunction. The Levee District appealed. On appeal, this court vacated portions of the circuit court's order denying the Levee District's request to modify the injunction and reversed certain orders stating that the circuit court maintained jurisdiction over the injunction order if changed conditions existed. *Vandalia Levee & Drainage District*, 2020 IL App (5th) 190109-U, ¶ 30. The case was remanded with directions to consider the propriety of the Levee District's requested relief on the merits. *Id.* ¶ 38.

¶ 35    On July 24, 2020, the Levee District filed a motion seeking to modify the 2014 injunction. On May 12, 2021, the Levee District amended that motion. On June 23, 2021, Parish Holdings filed a motion to dismiss this amended motion.

¶ 36    The Levee District's amended motion was called for hearing on June 14, 2024. The court noted that it had the ability, under limited circumstances, to modify or dissolve its injunction more than 30 days after it was entered. However, the court cautioned that its jurisdiction was "limited to determining whether changes in the applicable law or facts since the rendition of the judgment warrant a modification of the terms of the injunction," and noted that its power did not include "the power to inquire into the propriety of the procedural and substantive aspects of the judgment

12

as to conditions existing at the time of *** [its] entry." The court indicated that the question then was whether the Levee District's motion alleged a relevant change in either the law or the facts.

¶ 37    Parish Holdings argued that the Levee District failed to allege the requisite change in the law or facts and was seeking a modification of the injunction because the original injunctive relief was insufficient. The circuit court noted that the Levee District only made allegations of "continuing injury" because the work ordered in that injunction did not fix the underlying problem. The Levee District's attorney ultimately agreed with the circuit court and stated that the original injunctive relief ordered was deficient and the only property condition change was the ineffective repairs mandated and completed pursuant to the injunction. The circuit court found that the injunctive remediation, albeit ineffective, did not constitute a change in facts allowing modification of the injunction. Noting that the Levee District only alleged that the original remediation was ineffective and did not allege any change in circumstances, the court granted Parish Holdings' motion to dismiss.

¶ 38    The Levee District filed a motion asking the circuit court to reconsider its denial. On August 23, 2024, the circuit court denied that motion because the Levee District again failed to plead a change in law or facts.

¶ 39    As the Levee District's issue in this appeal only involves questions of fact about whether the injunctive relief awarded should be modified, we find that the standard of review is whether the circuit court's order denying modification of the 2014 injunction was contrary to the manifest weight of the evidence. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 22. Factual determinations are considered as contrary to the manifest weight of the evidence only if "an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Vancura v. Katris*, 238 Ill. 2d 352, 385-86 (2010). With this standard of

13

review, we defer to the circuit court "as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). In addition, "[a] reviewing court will not substitute its judgment for that of the [circuit] court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Id.* at 350-51 (citing *In re D.F.*, 201 Ill. 2d 476, 499 (2002)).

¶ 40 The Levee District contends that the remediation ordered by injunction was insufficient and not based on evidence. Originally, the Levee District asked the circuit court to order the complete removal of certain Pecan Island levees. Instead, the 2014 order directed the defendants to cut gaps in those levees. The circuit court judge who entered the 2014 injunction order stated that "the arguments of plaintiff's counsel *** completely failed to assist the Court in crafting an order fulfilling the directive of the appellate court" and noted that nothing in the 2012 appellate court order suggested that the levees needed to be completely removed.

¶ 41 On June 14, 2024, after argument by the parties, the circuit court denied the Levee District's motion to modify the 2014 injunction, finding that its claim was meritless. The Levee District has argued that the change in circumstances warranting modification of the injunction was evident by the continuing harm caused by flood water—continued flooding. The Levee District's attorney acknowledged that she had newer engineering modeling that was not available at the time the injunction was entered. The court noted the Levee District's agreement that the only changes to the Pecan Island property were those ordered in the injunction; that that there had been no subsequent changes; and that the initial injunctive relief was insufficient to address all issues. The court then found that the failed remediation work ordered in the 2014 injunction did not constitute a change in facts allowing modification of the injunction.

14

¶ 42   "The purpose of a motion to reconsider is to bring to the trial court's attention a change in the law, an error in the trial court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision." *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 79. When a party's motion to reconsider is based on new evidence, facts, or legal theories not presented in the prior proceedings, the standard of review is abuse of discretion. *Id.* ¶ 80. On August 23, 2024, the circuit court held a hearing on the Levee District's motion to reconsider the circuit court's June 14, 2024, order denying her amended motion to modify. The transcript of this hearing is not included in the record on appeal, but the docket entry indicates that the Levee District argued that the circuit court misapplied the law and should modify the injunction to correct continuing harm. Although the circuit court inquired about any change in conditions that would allow the court to modify the injunction, the Levee District provided no factual evidence of a "change in conditions." On August 23, 2024, the circuit court denied the Levee District's motion to reconsider its previous denial.

¶ 43   The Levee District's argument for modification of the 2014 injunction is that the remediations ordered by the circuit court did not fully fix the issues and that there is continued flooding despite the completed remediations. The Levee District did not make any new factual allegations when it asked the court to reconsider its denial of the amended motion and instead only argued that the 2014 remediations did not work.

¶ 44   While courts have authority to modify injunctions when changed circumstances in facts or law occurred after entry of the injunction (*American Institute of Real Estate Appraisers of National Ass'n of Realtors v. National Real Estate Ass'n, Inc.*, 191 Ill. App. 3d 867, 870 (1989)), courts must not reevaluate the appropriateness of injunctive relief relative to the "procedural and substantive aspects of the judgment as to conditions" that existed when the injunction was ordered.

15

*Id.* (citing *Bundy v. Church League of America*, 125 Ill. App. 3d 800, 806-07 (1984)). In other words, courts cannot reevaluate the injunction based on conditions in existence when the original injunction was entered. While the Levee District has new expert opinions with new modeling techniques about what work will remediate the flooding issues, those new opinions, although recently obtained, do not change the facts in existence when the circuit court entered its permanent injunction. Thus, the Levee District failed to demonstrate a change in facts that would warrant a modification of the injunction. *Sola v. Roselle Police Pension Board*, 2012 Il App (2d) 100608, ¶¶ 13-14. Accordingly, we affirm the circuit court's order denying the Levee District's motion to reconsider the denial of its motion to modify the 2014 injunction.

¶ 45                    C. Summary Judgment in Favor of Parish Holdings

¶ 46    Before we address the propriety of the circuit court's summary judgment for Parish Holdings, we must review certain relevant background facts and earlier pleadings and orders in this case. On May 22, 2014, Keck, the Keck Defendants and Parish Holdings were enjoined to remediate certain levees. In the same order, the circuit court reserved the issue of damages against all defendants for further determination.

¶ 47    On August 27, 2019, the circuit court held a hearing on damages. The defendants in that trial were Keck and the Keck Defendants because, at the time, Parish Holdings had been granted summary judgment. The circuit court found that total damages against all defendants, except Parish Holdings, were $565,458 which represented "Recovery Period" damages. The Levee District did not seek reconsideration of the damages award and did not appeal from the circuit court's verdict.

¶ 48    In 2022, the Levee District sought additional damages against Parish Holdings for the years 2015 to 2020, but the circuit court denied that request because it was unable to identify any change

16

in the condition of the levees in question since the injunction-mandated remediation work was completed.

¶ 49 On May 28, 2024, the court approved a settlement between the Levee District and Keck and the Keck Defendants for $915,000. All pending litigation between the Levee District and all defendants, except Parish Holdings, was dismissed with prejudice on April 17, 2024. The order became final and non-modifiable on June 27, 2024.

¶ 50 At the June 14, 2024, hearing on multiple pending issues, including the Levee District's motion seeking monetary damages from Parish Holdings, the Levee District argued that total damages between KLC (one of the Keck defendants) and Parish Holdings was $1,160,000; that KLC had already paid $580,000; and that Parish Holdings was liable for the remaining $580,000 in damages. The Levee District then stated that it had been "completely compensated" during the "Recovery Period [from April 18, 2003, to September 11, 2014]" and that it was not seeking damages from Parish Holdings for that time period. The circuit court noted that the Recovery Period was previously established by the court "as the period for which monetary damages could be recovered by the [Levee District]." The Levee District informed the court that it was "seeking damages—half the damages of the entire period from [Parish Holdings]" based on a later time period. The following exchange took place during the hearing:

"THE COURT: But you have the motion—you have the motion for damages. But you have just told me that you are not seeking damages against Parish Holdings for the recovery period.

MS. LIVINGSTON [(Attorney for the Levee District)]: I have collected damages up to 2014 from KLC, and there would be no setoff for that period. But I am still [owed]

17

another $580,000 worth of damages, which I believe you are telling me that I am being denied because it is not new."

¶ 51    During the June 14, 2024, hearing, the circuit court referenced Vandalia Levee's motion for monetary damages against Parish Holdings. In noting that $565,458 was the maximum amount of damages for the Recovery Period, the circuit court stated: "Based on this theory of liability, if *** [Parish Holdings] had not been dismissed from this case, and participated in the damages trial, the maximum judgment against it would have been no higher *** [than] the other parties, namely $565,458." At the conclusion of the hearing, the circuit court took the Levee District's motion for monetary damages under consideration.

¶ 52    On July 31, 2024, Parish Holdings filed its motion seeking summary judgment against the Levee District, contending that the Levee District had already been fully compensated in its settlement with the other defendants, and that Parish Holdings was entitled to a setoff in the amount of the settlement.

¶ 53    On September 16, 2024, the circuit court denied the Levee District's motion for damages and granted Parish Holdings' motion for summary judgment. In its written order, the circuit court noted that the Levee District dismissed its claims against all other defendants, and in exchange for those dismissals, it received total compensation of $900,000.[2] The court noted that the Levee District had acknowledged on the record that it was no longer seeking compensation from Parish Holdings for damages incurred during the Recovery Period. The court stated that even if the Levee District had a judgment against Parish Holdings, it could not collect a judgment more than the total

_____

[2]Although the circuit court indicates that the Levee District settled for $900,000, the amount it received was $915,000. Any additional references to the amount the Levee District received in settlement will be to the corrected total amount of $915,000.

18

amount of damages awarded at trial of $565,458 because it had recovered that amount and more with its total settlement of $915,000.

¶ 54 "A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." 735 ILCS 5/2-1005(b) (West 2022). Summary judgment should be granted where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id*. § 2-1005(c). The circuit court strictly construes the pleadings, depositions, admissions, and affidavits against the movant and liberally in favor of the nonmoving party in determining whether a genuine issue of material fact exists. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. "The nonmoving party may defeat a claim for summary judgment by demonstrating that a question of material fact exists." *Id.* Although summary judgment is a drastic means to end a claim, it should be granted if the rights of the party seeking judgment are clear and free from doubt. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "Appellate review of a trial court's grant of summary judgment is *de novo*," and reversal will occur only if a genuine issue of material fact is found to exist. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005).

¶ 55 Given the unique facts of this case, we find that section 2(c) of the Contribution Act is relevant:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury \*\*\*, it does not discharge any of the tortfeasors from liability for the injury \*\*\* unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount

19

stated in the release or the covenant or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2022).

This statutory provision has been explained as follows: "A nonsettling defendant may claim as a setoff any amount that the plaintiff recovered in a prior settlement with settling defendants, but the only amounts that may normally be applied are those which compensated for the same injury *** for which the nonsettling defendant was ultimately found liable." *Lard v. AM/FM Ohio, Inc.*, 387 Ill. App. 3d 915, 926 (2009).

¶ 56    While the Levee District seems to be arguing that it is only seeking damages from Parish Holdings for the time frame of 2015 to 2020, we find that this later years' damages claim is without support. The circuit court has not awarded any damages in this case outside of the Recovery Period. The Levee District's 2022 request to expand the time frame for seeking damages was denied because it failed to establish any change in the condition of the levees in question since the injunction-mandated remediation work was completed.

¶ 57    We conclude that the Levee District's claim for damages against Parish Holdings is appropriate relative to the Recovery Period. However, because the Levee District settled its claims against all other defendants for Recovery Period damages in the amount of $915,000, we hold that the Levee District's potential recovery on its claim against Parish Holdings is reduced "to the extent of any amount stated in the release or the covenant or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c). Thus, as the damages awarded after the August 2019 trial totaled $565,458, and ultimately, the other defendants settled with the Levee District for $915,000, Parish Holdings is entitled to judgment because it would only be responsible for "the amount of the consideration actually paid" in settlement by the other defendants. *Id*. We affirm the order of the circuit court.

20

¶ 58                    D. Motion for Default on Damages

¶ 59    The Levee District contends that it is entitled to a default on the issue of damages against Parish Holdings in the amount of $580,000. On December 9, 2022, the Levee District filed its "Verified Motion for Money Judgment as a Matter of Law for $580,198 in Damages from 2015 to Present Where Remedial Expenditures are Not Contested." Parish Holdings did not file a responsive pleading because the content of the Levee District's motion was seeking "additional" damages which Parish Holdings found illogical because it had not previously been found responsible for damages. The Levee District filed a motion for default judgment on May 15, 2024. The circuit court considered the Levee District's motion but ultimately did not enter a default judgment against Parish Holdings. Parish Holdings then filed its responsive pleading. On appeal, the Levee District takes issue with the circuit court's decision to allow Parish Holdings to respond more than a year after the motion was filed.

¶ 60    "A trial court's determination concerning whether to *** grant or deny a motion for default judgment, will not be disturbed absent an abuse of the court's discretion." *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 51. An abuse of discretion will be found if the court acts arbitrarily without employing " 'conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted.' " *Id.* (quoting *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001)).

¶ 61    "A trial court may enter a judgment by default 'for want of an appearance, or for failure to plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought.' " *Id*. ¶ 57 (quoting 735 ILCS 5/2-1301(d) (West 2008)). Default judgments are not encouraged and are deemed to be drastic in nature—only to be ordered "as a last resort." *Id.* (citing *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 573-74 (2003)). "A trial

court should deny a motion for default judgment when it results in the denial of substantial justice." *Id.* (citing *Donahue*, 337 Ill. App. 3d at 574).

¶ 62    The Levee District does not indicate in its brief whether the circuit court was asked to enter a default judgment before its May 2024 pleading. Ultimately, the circuit court allowed Parish Holdings to respond. Oue review of the record leads to the conclusion there is no basis to find that the circuit court abused its discretion in this matter. *Id*. ¶ 51.

¶ 63                              E. Supreme Court Rule 137 Sanctions

¶ 64    The Levee District filed its motion for sanctions against Parish Holdings on May 22, 2024. The motion listed alleged factual and/or legal misstatements dating from 2013. Generally, the Levee District raised law-of-the-case doctrine issues in response to Parish Holdings' pleadings.

¶ 65    The motion for sanctions was called, argued, and denied by the circuit court on August 23, 2024. The docket entry order stated:

> "P[LAINTIFF]'S M[O]T[IO]N FOR SANCTIONS IS DENIED; ALTHOUGH THE P[LAINTIFF] HAS ASSERTED THEORIES THAT DID NOT ULTIMATELY PREVAIL, THIS C[OUR]T CANNOT FIND ANY INSTANCE IN WHICH ONE OF THE D[EFENDANT]'S ATTORNEYS SUBMITTED A PLEADING THAT WAS NOT WELL GROUNDED IN EXISTING FACT OR LAW; FURTHER SUPPORT FOR THIS FINDING IS EVIDENCED BY THE FACT THAT MANY OF THE THEORIES WERE AGREED WITH BY DIFFERENT JUDGES THROUGHOUT THIS LITIGATION."

¶ 66    On appeal, the Levee District argues: "[e]very position against the law of the case is by definition frivolous" and Parish Holdings' July 31, 2024, summary judgment motion "misstates and misapplies law to obtain judgment". The Levee District states that the sanctionable conduct began in 2013, continued in 2014 and also involved the 2015 "remand." Ultimately, the Levee

22

District acknowledges that the arguments "have been addressed but they are frivolous arguments not well grounded in fact or law and they cost *** [the Levee District] its remedy, again." In general, the Levee District contends that nearly all of Parish Holding's pleadings were designed "to harass or to cause unnecessary delay or needless increase in the cost of litigation, as a matter of law." In conclusion, the Levee District asks this court to grant its motion and remand for a determination of attorney fees and expenses attributable to Parish Holdings from 2013 to 2024, including this appeal.

¶ 67    In the Levee District's reply brief, it confirms its request for sanctions against Parish Holdings; stating: "Those frivolous positions and pleadings cost *** [the Levee District] dearly, not just in terms of frustrated effort and attorney's fees but in terms of the delay causing more real damages and repair work on the ground." In support, the Levee District cites to a single page in the appendix filed with the opening brief in this appeal. That single page in the appendix is a photo—labeled: "Five Photos Characterizing Levee [B]reaks and Undercuts Taken March 1, 2020." The Levee District fails to provide this court with an explanation of how the content of this photograph supports her "frivolous positions and pleadings" argument.

> " 'A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error.' " *People v. Universal Public Transportation, Inc.*, 2012 IL App (1st) 073303-B, ¶ 50 (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682, (1993)).

¶ 68    Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) provides rules regarding signature and certification on pleadings, motions, and any other legal filings, and states:

"Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

¶ 69 "The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits." *Yunker v. Farmers Automobile Management Corp.*, 404 Ill. App. 3d 816, 824 (2010). Rule 137 is designed to prohibit parties from abusing the court system with "vexatious and harassing actions based upon unsupported allegations of fact or law." *Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 581 (1997). However, the rule was not intended to penalize parties and their attorneys "because they were zealous *** in pursuing an action." *Yunker*, 404 Ill. App. 3d at 824. The rule is penal in nature and therefore must be strictly construed. *Toland v. Davis*, 295 Ill. App. 3d 652, 658 (1998) (citing *In re Marriage of Adler*, 271 Ill. App. 3d 469, 475 (1995)). "[E]ach element of a violation [must

24

be] specifically proved." *Deutsche Bank National Trust Co. v. Ivicic*, 2015 IL App (2d) 140970, ¶ 24 (citing *In re Estate of J.M.*, 287 Ill. App. 3d 110, 116 (1997)).

¶ 70    "When a party asks that Rule 137 sanctions be imposed, that party bears the burden of proof." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 243 (2000) (citing *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467 (1990)). The party seeking a sanctions award must establish that the opposing party "made untrue and false allegations without reasonable cause." *Id.* (citing *In re Estate of Wernick*, 127 Ill. 2d 61, 77 (1989)). Then, the circuit court must determine if the alleged false or misleading allegations "were warranted by existing law or a good faith argument for a change in the existing law, or whether the allegations were merely meant to harass or unduly delay the proceedings." *Taylor v. Highline Auto Sales, Inc.*, 2023 IL App (1st) 221590, ¶ 46 (citing *Technology Innovation Center, Inc.*, 315 Ill. App. 3d at 244).

¶ 71    The decision to grant Rule 137 sanctions is within the circuit court's sound discretion, and that determination will not be reversed absent an abuse of discretion. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 579 (2000). An abuse of discretion occurs when the ruling of the circuit court is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 72    We understand the contentious nature of this case but also recognize that the attorneys for both the Levee District and Parish Holdings have been zealous in their clients' representation. While the law-of-the-case doctrine establishes that legal issues addressed in an earlier appeal are binding and control the circuit court on remand, we also note that when the facts and arguments presented on remand substantially differ, a different interpretation is allowed. See *City of Chicago v. Eychaner*, 2020 IL App (1st) 191153, ¶ 33 (citing *Bilut v. Northwestern University*, 296 Ill. App.

25

3d 42, 47 (1998)). From our review of the Levee District's motion for sanctions and the underlying pleadings it cites, we find that Parish Holdings presented the circuit court with additional argument, evidence and/or expert opinion(s) in response to the issues being considered on remand, which can be appropriate. *Id.* We find no basis in the record and/or briefs on appeal to support the Levee District's claim that the circuit court abused its discretion in denying its request for sanctions and affirm the circuit court's order. *Blum*, 235 Ill. 2d at 36. We affirm the circuit's order.

¶ 73                                F. Punitive Damages

¶ 74    In August 2018, the Levee District sought leave to seek punitive damages against Keck and the Keck Defendants. On September 10, 2018, the circuit court denied this request, determining that the only issue to be decided was compensatory damages resulting from the wrongful construction of levees on Pecan Island by Keck and the Keck Defendants. On October 9, 2018, the Levee District asked the circuit court to reconsider the denial of punitive damages against Keck and the Keck Defendants and filed a separate motion seeking punitive damages against Parish Holdings. On February 13, 2019, the circuit court denied both motions. The circuit court found that although the defendants were negligent which resulted in a private nuisance, the defendants' conduct was not done "with evil motive or with reckless and outrageous indifference to a highly unreasonable risk of harm and with conscious indifference to the rights and safety of others." In its ruling, the circuit court additionally stated:

> "[T]he Court is not now persuaded to reconsider its prior ruling. Moreover, given the utter lack of involvement by the defendant Parish Holding[s] in the [levee] activities, the Court is even more decided that punitive damages against that defendant are not now warranted."

26

¶ 75    Approximately eight years later, on July 17, 2024, the Levee District filed another request to seek punitive damages from Parish Holdings "based on Parish's knowledge of harm and its conscious disregard of probable injurious consequences its land caused to the [Levee District]." The Levee District's lengthy motion recited the procedural history of this case, including appeals, and noted that Parish Holdings' knowledge of potential Pecan Island issues began in 2005 when it entered into a lease with Keck who was already a Pecan Island tenant. The Levee District also cited to portions of an appellate court order issued by this court which cited section 837(1) of the Restatement (Second) of Torts. Section 837(1) provides:

> "A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and
>
> (a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on, and
>
> (b) he then knows or should know that it will necessarily involve or is already causing the nuisance." Restatement (Second) of Torts § 837(1) (1979).

This court found that Parish Holdings' renewal of Keck's lease, after it became aware of his levee activities on the leased land, created a genuine issue of material fact precluding summary judgment for Parish Holdings on the issue of monetary damages. *Vandalia Levee & Drainage District*, 2020 IL App (5th) 190109-U, ¶¶ 33-36. However, the appellate court did not reference or analyze the question of punitive damages. *Id.*

¶ 76    On August 23, 2024, the circuit court denied the Levee District's punitive damages motion with the following docket entry:

27

"P[LAINTIFF]'S RENEWED M[O]T[IO]N FOR PUNITIVE DAMAGES IS DENIED; THIS MATTER HAS ALREADY BEEN DECIDED BY A PRIOR JUDGE AND THERE HAS BEEN NO CHANGE IN CIRCUMSTANCE; FURTHER, THE CURRENT D[EFENDAN] IS NOT THE ONE TO HAVE ALLEGED TO TAKEN ANY WILLFUL ACTION; TO THE CONTRARY, IT IS A NAMED DEFENDANT FOR ITS ALLEGED INACTION IN REMOVING LEVIES CONSTRUCTED BY ITS TENANT."

¶ 77    "A trial court maintains broad discretion in deciding whether or not to allow a requested amendment to a complaint, and its decision will not be disturbed unless it abused that discretion." *Ford v. Herman*, 316 Ill. App. 3d 726, 732 (2000) (citing *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992)).

¶ 78    The Levee District failed to present sufficient facts or evidence warranting reconsideration of the 2018 court orders denying its punitive damages requests. Moreover, the Levee District alleged no foundational facts to establish that Parish Holdings committed any acts or omissions exhibiting "willfulness, wantonness, malice or oppression" against the Levee District during the relevant time periods. *Rodrian v. Seiber*, 194 Ill. App. 3d 504, 509-10 (1990) (citing *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill. App. 2d 454, 467 (1966)). Accordingly, we find that the circuit court did not abuse its discretion in denying the Levee District's request to file punitive damages claim, and we affirm.

¶ 79                              III. CONCLUSION

¶ 80    This is the sixth appeal to this court involving these parties. We have endeavored to put a pencil through the heart of this case to ensure that there will not be a seventh. Unless our supreme court holds otherwise, it is our fervent desire that this case will remain interred from now until the end of time.

28

¶ 81    For the above reasons, we find that we have jurisdiction to hear the Levee District's motion seeking to modify the 2014 injunction; affirm the orders of Fayette County Circuit Court denying the amended motion to modify the 2014 injunction; granting summary judgment to Parish Holdings; allowing Parish Holdings to file a responsive pleading to the Levee District's motion for default; denying the Levee District's motion seeking Rule 137 sanctions; and denying the Levee District's request to seek punitive damages.

¶ 82    Affirmed.